FOREST HILLS UTILITY COMPANY, APPELLANT, *v.* WHITMAN, DIR. OF ENVIRONMENTAL PROTECTION, APPELLEE.
(Two cases.)
FOREST HILLS UTILITY COMPANY, APPELLEE, *v.* WHITMAN, DIR. OF ENVIRONMENTAL PROTECTION, APPELLANT.

(Nos. 73-874, 73-915 and 74-8—Decided January 29, 1975.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman* and *Mr. Rankin M. Gibson,* for Forest Hills Utility Company.

30

*Mr. William J. Brown,* attorney general, *Mr. William S. Fein, Mr. A. Mark Segreti, Jr.,* and *Mr. Joel S. Taylor,* for the Director of Environmental Protection.

O'NEILL, C. J. The primary issue in these procedurally complex appeals is whether Ohio's 1972 Environmental Protection Act (Amended Substitute Senate Bill No. 397, 134 Ohio Laws 695) authorizes the Director of Environmental Protection to rectify an inadequate public water supply situation by invoking the emergency-order power granted him under R. C. 6111.06(C).

The statutory history behind the relevant statutes leads this court to conclude he is not so authorized, and hence his July 9, 1973, order was unlawful.

The original predecessors of R. C. 6111.01 through 6111.08, inclusive, as they existed prior to the enactment of the 1972 Environmental Protection Act, were contained in Substitute Senate Bill No. 62 (124 Ohio Laws 855), passed in 1951. That Act established the Water Pollution Control Board, whose main function was to control, prevent and abate pollution of the state's water sources. One power which the Act vested in the Water Pollution Control Board was specified in G. C. 1261-1$g$(d)[3]:

"Whenever the Board officially determines that an emergency exists requiring immediate action to protect the public health or welfare, it may without notice or hearing issue an order reciting the existence of the emergency and requiring that such action be taken as is necessary to meet the emergency. Notwithstanding the provisions of subsections (a) and (b) of this section such order shall be effective immediately. Any person to whom such order is directed shall comply therewith immediately but on application to the Board shall be afforded a hearing as soon as possible, and not later than twenty days after such application. On the basis of such hearing the Board shall continue such order in effect, revoke it or modify it; provided

---

[3]Prior to the 1972 Environmental Protection Act, former G. C. 1261-1$g$(d) became R. C. 6111.06(C).

that no such emergency order shall remain in effect for more than sixty days after its issuance."

Although former R. C. 6111.06(C) did not define the type of emergency which would justify the invocation of the summary power found therein, the vesting of that power with the Water Pollution Control Board clearly demonstrated that only water pollution emergencies would provide such justification.

Since an inadequate public water supply situation is not a water-pollution emergency, it is undisputed that prior to the enactment of the 1972 Environmental Protection Act, R. C. 6111.06(C) could not be utilized to combat an inadequate water supply situation. Such a situation was, however, amenable to R. C. 6111.16 and 6111.17. R. C. 6111.16 provided, in part, that "if the Director [of Health] finds upon investigation that the public health is endangered by reason of the existence of an inadequate public water supply or water-works system, he shall notify the municipal corporation, county, public institution, corporation, partnership, or person, owning or operating such public water supply or water-works system of his findings and of the time and place, when and where a hearing may be had before the Public Health Council."

R. C. 6111.17 stated, in part:

"After the hearing provided for in Section 6111.16 of the Revised Code, if the Public Health Council determines that improvements or changes are necessary and should be made, the Director of Health shall notify the mayor or managing officer or officers of the municipal corporation, county, or public institution or the corporation, partnership, or person owning or operating such water supply or water-works system to make improvements, corrections, and changes in the location, protection, construction, operation, or maintenance of the water supply or water-works system satisfactory to the Director, so as * * * to provide a water supply and water-works system adequate to avoid endangering the public health. The order of the Director and the time fixed for making the improvements or changes shall be approved by the council and the notification

shall be made by personal service upon or by registered letter to the mayor or managing officer or officers of the municipal corporation, county, or public institution or to the officials, corporation, partnership, or person to whom said order applies."

Ohio's 1972 Environmental Protection Act completely restructured this state's programs pertaining to public water supplies. One section of the 1972 legislation established R. C. Ch. 3745. R. C. 3745.01 created the state Environmental Protection Agency, headed by a Director. The purpose of the Agency, according to R. C. 3745.01, is to "administer the laws and regulations pertaining to the prevention, control, and abatement of air and water pollution, public water supply, comprehensive water resource management planning, and the disposal and treatment of solid wastes, sewage, industrial waste, and other wastes."

It is obvious from this language that the Environmental Protection Agency would assume the water quality and quantity responsibilities formerly vested by R. C. Ch. 6111 in the Water Pollution Control Board, the Public Health Council and the Director of Health. Hence, it is not surprising that the 1972 Act abolished the Water Pollution Control Board and transferred its powers to the Environmental Protection Agency, and substituted references to the Agency or its Director for prior R. C. Ch. 6111 references to the Public Health Council and the Director of Health.

The Director contends that by consolidating in one agency the powers previously exercised by the Water Pollution Control Board, the Public Health Council and the Director of Health, the 1972 legislation also eliminated the inapplicability of R. C. 6111.06(C) to inadequate water supply situations. This court disagrees. Other than changing the holder of the powers contained in R. C. Ch. 6111, the 1972 Act did not materially alter the procedures previously established by law. In particular, the emergency-order power contained in R. C. 6111.06(C) was left intact, as were the notice and hearing provisions of R. C. 6111.16 and 6111.17. The failure or refusal of the General Assem-

bly to modify the emergency-order power set forth in R. C. 6111.06(C) in any way other than changing the holder of the power leads this court to conclude that the power is exercisable by the Director only in those situations in which it was formerly exercisable by the Water Pollution Control Board. Specifically, R. C. 6111.06(C) can be invoked only in cases involving water-pollution emergencies. An inadequate public water supply situation, which is the factual basis of these appeals, does not justify the issuance of an order pursuant to R. C. 6111.06(C). Instead, the Director must comply with the notice, hearing and order provisions of present R. C. 6111.16 and 6111.17. Since the July 9, 1973, order was issued without affording Forest Hills either notice or an opportunity for a hearing, it is unlawful.

The appellate procedure to challenge the July 9, 1973, order is found in R. C. Ch. 3745; it is the procedure initiated by Forest Hills when it appealed the Director's order to the Environmental Board of Review. This procedure is before this court in cases Nos. 73-915 and 74-8. The third paragraph of R. C. 3745.04 provides, in part:

"Any person who was a party to a proceeding before the Director may participate in an appeal to the Environmental Board of Review for an order vacating or modifying the action of the Director * * *."

The second paragraph of R. C. 3745.04 defines the word "action," as used in the statute, to include "the issuance, modification, or revocation of any lawful order other than an emergency order * * *."[4]

The Environmental Board of Review, in the appeal filed by Forest Hills, ruled that the July 9, 1973, order was an emergency order lawfully issued under R. C. 6111.06(C),

---

[4]It is obvious that the statutes pertaining to the jurisdiction of the Environmental Board of Review contain inconsistent and confusing language. A literal reading of the second paragraph of R. C. 3745.04 concerning the board's authority to review orders issued by the Director confines that authority to "lawful" orders. However, R. C. 3745.05 expressly authorizes the board to vacate or modify "unlawful" orders of the Director. Because neither party has relied upon the inconsistent language before this court, a resolution of the conflict would be inappropriate in this case.

and, hence, that the "emergency order" exception to its jurisdiction prevented it from reviewing the case. That ruling was erroneous. The board, and the Court of Appeals in reviewing the board's ruling, should have held that since the Director's order was issued without compliance with R. C. 6111.16 and 6111.17, it was unlawful and, therefore, vacated.

In case No. 74-8, the appeal (cross-appeal) filed in conjunction with case No. 73-915, the Director seeks a ruling from this court that the Environmental Board of Review does not have jurisdiction to review an emergency order issued under R. C. 6111.06 (C) until there has been compliance with the hearing and final order provisions of R. C. 6111.06(C). Since this case does not involve a legitimate exercise of the Director's R. C. 6111.06(C) power, the appeal (cross-appeal) will be dismissed.

Case No. 73-874 involves the appeal of the Director's July 9, 1973, order initiated by Forest Hills before the Court of Common Pleas of Franklin County. Forest Hills argues that this court should not reach the merits of this appeal, but, instead, should reverse the Court of Appeals on the ground that the trial court judgment under review denying the Director's motion to dissolve the stay order was not a final and, hence, appealable order. This court agrees with that argument. R. C. 2505.02 defines a "final order" as:

"An order affecting a substantial right in an action which in effect determines the action and prevents a judgment, an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment * * *."

The Director contends that the July 9, 1973, order was a valid emergency order issued pursuant to R. C. 6111.06(C), that that statute expressly makes such an order immediately effective, and therefore that the stay order affected a substantial right vested in the Director for combating a health emergency.

The foundation upon which the Director's contention is based consists of his labeling the July 9, 1973, order as

an R. C. 6111.06(C) order. Since this foundation is faulty, this court need not answer the Director's argument. The July 9, 1973, order itself recites that it was issued to remedy an inadequate water supply situation; such a situation does not justify the invocation of the Director's emergency power. Hence, the order was an invalid exercise of the Director's summary power.

The trial court's overruling of the Director's motion to dissolve the stay order in this case is analogous to an order of a trial court overruling a motion to vacate a temporary injunction. This court has held that such an order is not a final order. *Jones* v. *First National Bank* (1931), 123 Ohio St. 642, 176 N. E. 567. Since there was no final, and hence appealable, order before the Court of Appeals in the action originating in the Court of Common Pleas, the appellate court erred in considering the merits of that case. The appeal should have been dismissed. The judgment of the Court of Appeals in that action is before this court in case No. 73-874. When this court reverses a judgment of a Court of Appeals on the basis that there was no final order before the appellate court, the normal relief granted is a remand to the trial court for further proceedings. *Kennedy* v. *Chalfin* (1974), 38 Ohio St. 2d 85, 310 N. E. 2d 233; *Klein* v. *Bendix-Westinghouse Co.* (1968), 13 Ohio St. 2d 85, 234 N. E. 2d 587. However, no remand will be ordered in case No. 73-874, because the issues in that case are disposed of by this court's opinion and judgment in case No. 73-915.

For the foregoing reasons, the judgment of the Court of Appeals in case No. 73-874 is reversed and the case dismissed. The judgment of the Court of Appeals in case No. 73-915 is reversed; the Director's July 9, 1973, order is vacated and the case dismissed. Case No. 74-8, the appeal (cross-appeal) filed by the Director of Environmental Protection in conjunction with case No. 73-915 is dismissed.

*Judgments accordingly.*

Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.